UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| BRYAN SWETZ, individually and on behalf of all others similarly situated, | x<br>:<br>: | |
| Plaintiff, | : | Case No. |
| v. | :<br>:<br>: | |
| CHURCH & DWIGHT CO., INC., | :<br>: | **CLASS ACTION COMPLAINT** |
| Defendant. | :<br>: | **JURY TRIAL DEMANDED** |
| | :<br>:<br>: | |

---

Plaintiff, BRYAN SWETZ (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Church & Dwight Co, Inc. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Zicam® Cold Remedy Nasal Swabs, Zicam® Nasal AllClear Swabs, and Orajel™ Baby Teething Swabs throughout the state of New York and throughout the United States (hereinafter the "Products"):

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by affirmatively highlighting the Products as safe for consumption while omitting and not disclosing to consumers on its packaging that the Products are contaminated with *Penicillium sumatraense*, *Penicillium citrinum*, and *Exophiala spiniphera* (hereinafter the "Fungi").

3.      Indeed, The Zicam Products contain the representations "Shortens Colds," "Homeopathic," and "Zinc Free." The Orajel Product contains the representations "Cooling," "Pediatrician Recommended" Benzocaine Free" and "Drug Free"

4.      As described in further detail below, the Products contain the Fungi, which could lead to serious and life-threatening adverse health consequences. Fungi of the genus *Penicillium* can be inhaled or ingested by humans, which can lead to penicilliosis. Complications that can arise from *Penicillium* intake include pneumonia, keratitis, endocarditis, and urinary tract infections.[1]

5.      *Penicillium citrinum*, in particular, produces a mycotoxin called citrinin.[2] Citrinin intake in humans can cause a significant risk of kidney disease, as well as posing a danger to the liver, bone barrow, and mitochondrial respiratory system.[3] The fungus *Exophiala spinifera* is also dangerous to human health, with those exposed to it facing significant risk of cutaneous lesions.[4]

6.      Consumers like Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from known harmful substances, including the Fungi.

7.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the cold relief and baby products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and may even be life threatening.

8.      Unfortunately for consumers, like Plaintiff, the Products they purchased from Defendants contain the Fungi.

9.      Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain the Fungi. Knowing of the presence of the Fungi is material to reasonable consumers. Knowledge of the presence of the Fungi was solely within the possession

---

[1] https://pmc.ncbi.nlm.nih.gov/articles/PMC5551157/#sec3-ijerph-14-00719
[2] https://pmc.ncbi.nlm.nih.gov/articles/PMC5551157/#sec3-ijerph-14-00719 ungi - PMC
[3] https://pmc.ncbi.nlm.nih.gov/articles/PMC8874403/
[4] https://pmc.ncbi.nlm.nih.gov/articles/PMC2941521/

of Defendant, and consumers could only obtain such information by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product infected with fungi when in fact they are purchasing Products contaminated with the Fungi.

10. Defendant's own recall and other testing confirmed and demonstrated the presence of the Fungi in Plaintiff's products.

11. These recalls evidence the widespread contamination of these Products, which will be further established through independent testing.

**Defendant's Recall is Insufficient**

12. Defendant issued a recall of its Products on June 6, 2025, and then updated the recall on June 10, 2025 (together as the "Recall").

13. The recall announcement instructs "consumers who purchased the Products to stop using them immediately." Consumers with questions are directed to their "Consumer relations team at (800) 981-4710 team Monday through Friday, 9am-5pm ET."

14. This recall was, thus, deliberately designed to preclude the vast majority of consumers from receiving a refund.

15. The recall announcement Plaintiff first saw did not mention any ability to obtain a refund.

16. Nowhere in the recall announcement on the Company site are there instructions on how consumers are to return the contaminated products and receive a refund.[5]

17. After clicking through to an additional page, Defendant advises that refunds are available only after the consumer submits "images of [the] product's label . . . before returning the

---

[5] https://www.churchdwightrecall.com/ (Last Accessed June 11, 2025).

unit."[6]

18. Defendant is well aware that recall notices such as the one in this case reach a very small fraction of consumers.

19. Any consumer who is made aware of the recall will be predisposed to throwing the Products away. This would eliminate entitlement to a refund, even if the consumer maintained proof of purchase.

20. Unlike the situation with nearly all class action resolutions, here, individuals with proof of purchase who have discarded the product *are not entitled to a refund*.

21. Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Products.

22. The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

23. Plaintiff and other consumers purchased the Products under the reasonable impression that they were free of fungal contamination. Because Plaintiffs were misled into purchasing Products that contain the Fungi and are hazardous to human health, they are entitled to the opportunity to return the contaminated Products in exchange for a full refund. Defendants offer no such opportunity in their recall announcement.

24. Therefore, the class action remedy is superior to Defendant's failed recall in every conceivable fashion.

25. Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain the Fungi. This omission leads a reasonable consumer to

---

[6] https://app.techsee.me/dynapp/?hint=06o1eyecjisa (Last Accessed June 11, 2025).

believe they are not purchasing a product that contains the Fungi when in fact they are purchasing a product contaminated with the Fungi.

26. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for insertion into the nose and mouth and do not contain any harmful components. Indeed, consumers expect the packaging and labels to accurately disclose the presence of fungi within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, the Fungi.

27. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, the Fungi, which are dangerous to a person's health and well-being. Nevertheless, Defendant does not list or mention any of the Fungi anywhere on the Products' packaging or labeling.

28. Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products were material to Plaintiff and Class Members. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received were Products contaminated with Fungi that are harmful to consumers' health.

29. That is because Defendant's Products containing, or at risk of containing the Fungi, have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain—the Fungi.

30. As set forth below, health products, such as Defendant's Products, are in no way safe for human use and are entirely worthless.

31. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

32. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350 and resulted in unjust enrichment to Defendant. Defendant also breached and continues to breach its warranties regarding the Products.

33. Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

34. Defendant manufactures, markets, advertises, and sells health products for both children and adults.

35. Consumers have become increasingly concerned about the effects of ingredients in products that they insert into their bodies. Companies, such as Defendant, have capitalized on consumers' desire for symptom-relieving and pain-relieving products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

36. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as the Fungi, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

37. The Products' packaging does not identify any of the Fungi. Indeed, none of the Fungi are listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of the Fungi in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, the Fungi.






38.

39. In addition, the Products contain affirmative statements which indicate to consumers that the Products are safe for consumption. The Zicam Products contains the representations "Shortens Colds," "Homeopathic," and "Zinc Free." The Orajel Product contains the representations "Cooling," "Pediatrician Recommended" Benzocaine Free" and "Drug Free" All of these affirmative representations are meant to induce consumers to purchase the Products under the mistaken belief that they can be consumed safely and without ill effect.

40. However, the Products contain, or are at risk of containing, the Fungi.

41. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing health products for many years, including producing and manufacturing the contaminated Products.

42. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of fungal contamination, as well as the ability to test the Products for fungal contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

43. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

44. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

45. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing the Fungi is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

46. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they insert into their noses and mouths, and their children's noses and mouths. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained the

Fungi, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

47. Consumers rely on marketing and information to make purchasing decisions.

48. By omitting that the Products include the Fungi on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained the Fungi.

49. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

50. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

51. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without the Fungi over comparable products not so marketed.

52. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

    a. Paid a sum of money for Products that were not what Defendant represented;

    b. Paid a premium price for Products that were not what Defendant represented;

    c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

    d. Were deprived of the benefit of the bargain because the Products they

purchased had less value than what Defendant represented; and

e. Were denied the benefit of the properties of the Products Defendant promised.

47. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

48. Plaintiff and the Class Members paid for Products that do not contain the Fungi. Since the Products do indeed or possibly contain the Fungi, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

49. Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

50. Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiff and Class Members known the truth about the Products, i.e., that they do or possibly contain the Fungi, they would not have been willing to purchase them at any price, or, at minimum, would have paid less for them.

## JURISDICTION AND VENUE

51. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members;

(2) Plaintiff is a citizen of New York, and Defendant Church & Dwight Co., Inc. is a citizen of New Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

53. Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff**

54. Plaintiff is a resident of Dutchess County New York. Plaintiff purchased the Zicam® Cold Remedy Nasal Swabs and Orajel™ Baby Teething Swabs Products at issue in this matter at a Target retail location in Poughkeepsie, New York during the class period.

**Defendant**

55. Defendant, Church & Dwight Co., Inc., is a New Jersey company with its principal place of business in Ewing, New Jersey.

56. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

57. Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling

practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

58. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Nationwide Class").

59. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

60. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

61. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

62. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

63. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

    c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

    d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

    e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

64. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

65. <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer protection claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

66. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

67.  <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate, in this single venue, the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

68. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

69. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

71. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

72. There is no adequate remedy at law.

73. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

74. Defendant's improper consumer-oriented conduct—including failing to disclose that the Products contain the Fungi —is misleading in a material way in that it, *inter alia*, induced

Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

75. Plaintiff and the New York Subclass Members have been injured since they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

76. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

77. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

78. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

79. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

80. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

81. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment

> opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

82. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products since it misrepresents that the Products are safe for use and doesn't list that the Products contain the Fungi.

83. Plaintiff and the New York Subclass Members have been injured since they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

84. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

85. Defendant made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

86. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

87. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

88. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

89. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members)**

90. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91. Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

92. Defendant's conduct violated, *inter alia*, state law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

93. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

94. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented them to be.

95. Accordingly, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

96. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments so that Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: June 11, 2025

                                                                         Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:   /s/ *Philip J. Furia*

Philip J. Furia, Esq.
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313)303-3472
Email: nsuciu@milberg.com

\* *Pro hac vice* application forthcoming

*Counsel for Plaintiff and the Class*